UNITED STATES of America

v.

Charles L. McDANIEL, a/k/a "Black Danny" (two cases).

Nos. 74–1863, 74–1864.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 12, 1976.

Decided May 18, 1976.

Rehearing Denied July 7, 1976.

William J. Garber, Washington, D. C., with whom Kenneth D. Wood, was on the brief for appellant.

Henry F. Greene, Asst. U. S. Atty., and William C. Brown, Atty., Dept. of Justice, Washington, D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., was on the brief for appellee.

Before TAMM and ROBINSON, Circuit Judges and JUSTICE,* United States District Judge for the Eastern District of Texas.

Opinion for the Court filed by Circuit Judge TAMM.

TAMM, Circuit Judge:

## I. INTRODUCTION

This case arose from a large scale investigation by the Internal Affairs Division ("IAD") of the Metropolitan Police Department into organized gambling and police corruption, during which several officers who had previously received bribes decided to cooperate with the IAD. In addition, on November 11, 1972, a United States district court judge approved a wire intercept order, allowing police to tap appellant Charles L. McDaniel's telephone, on the basis of a detailed affidavit reciting numerous interviews with police officers, informants, undercover police officers, and former officers now cooperating in the investigation (Tr. 5809, 7955–56). During the course of this wire interception, telephone calls were recorded which generally corroborated the allegations in the affidavit that appellant was the central figure in the gambling/bribery operation. The investigation and wiretap resulted in the indictment of 15 persons, including appellant and several police officers.

On April 17, 1973, appellant and 14 co-defendants were charged in a 30-count indictment, No. 74–1864, consisting of 5 conspiracy counts and 25 separate substantive counts. The first all-inclusive count charged all 15 defendants with having participated in a single conspiracy to promote an illegal lottery known as the "numbers game" through bribery of law enforcement officers in violation of 22 D.C.Code § 1501 (1938) (lottery) and 18 U.S.C. § 201(b) and (c) (1962) (bribery of officers). The next four counts charged lesser included conspiracies to promote a numbers operation through bribery of law enforcement officers involving groups of less than all defendants. Each of the overt acts charged in these lesser included conspiracies was also charged as an overt act in the first all-inclusive conspiracy.

The remaining 25 counts of the indictment charged various defendants with substantive bribery offenses in violation of 18 U.S.C. § 201(b) and (c). Each of these offenses was included as an overt act in the all-inclusive conspiracy count and in one or more of the lesser included conspiracy counts. Appellant was charged in 9 of the 30 counts—6 substantive counts, the first all-inclusive conspiracy count, and 2 of the lesser included conspiracy counts.

In addition, appellant was charged in a two-count indictment, No. 74–1863, with having offered bribes to Matthew Rettew[1] on February 13, 1973, and March 1, 1973, during the course of the undercover investigation into police corruption. The district court consolidated the two indictments for

---

* Sitting by designation pursuant to 28 U.S.C. § 292(d).

1. Matthew Rettew, a police officer in the District of Columbia at the time the alleged offenses took place, was named in the Bill of Particulars as an unindicted co-conspirator.

trial and denied appellant's motions for severance.[2]

The case proceeded to trial on October 23, 1973, and continued for almost four months, producing a transcript of some 12,000 pages. At the conclusion of the government's case-in-chief, the trial court determined that the government had failed to make a prima facie case against two of the 15 defendants and granted their motions for acquittal (Tr. 10706). At this point, the court concluded that, under the government's theory of the indictment, there could be no conviction of *any* defendant under the all-inclusive conspiracy count (Count I) unless *all* 14 defendants were convicted; consequently, the court dismissed Count I as to all defendants (Tr. 10708, 10725–27, 11019).

The four lesser included conspiracy counts and 25 substantive bribery counts were then submitted to the jury. Appellant was convicted of one conspiracy count, Count IV of the indictment, restricted to the conduct of appellant's gambling operation and alleging bribery of police officers, including Harold Crook and Delmo Pizzati, during the period from January 1, 1971, to the return of the indictment. In addition, appellant was convicted of the two substantive bribery counts involving Officer Rettew. Co-defendant Pizzati was convicted of the same conspiracy charge but was acquitted of two substantive charges. The remaining nine defendants were acquitted on all counts in which they were charged.

## II. MERITS OF THE CASE

Appellant presents four issues for our consideration. We deal with the issues *seriatim*, but find them to some extent interrelated and, consequently, have overlapped our treatment of them to some degree.

### A. Joinder of Defendants and Offenses

Appellant first contends that the trial court improperly joined defendants and offenses in this case and abused its discretion in denying appellant's motions for severance. We disagree.

▮ Joinder of multiple defendants and offenses is governed by Fed.R.Crim.P. 8. Rule 8(b) permits *joinder of defendants* "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." In this case, the first conspiracy count charged all defendants, including appellant, with a single, all-inclusive conspiracy. The lesser included conspiracy counts charged smaller conspiracies which, according to the government's allegations, were all steps in the formation of the single overall conspiracy charged in Count I. The smaller counts were alternative charges to Count I, since the defendants could not have been convicted of participation in both the overall conspiracy and a lesser included conspiracy.[3] We find nothing in this case to take it outside the general rule that persons indicted together should be tried together; the decision whether to grant separate trials was thus within the discretion of the trial court and is reviewable only for clear abuse. *United States v. Leonard*, 161 U.S.App.D.C. 36, 494 F.2d 955 (1974); *Brown v. United States*, 126 U.S.App.D.C. 134, 375 F.2d 310, 315 (1966); *Robinson v. United States*, 93 U.S. App.D.C. 347, 210 F.2d 29 (1954); *Lucas v. United States*, 70 U.S.App.D.C. 92, 104 F.2d 225 (1939). We find no such clear abuse here.[4]

2. The trial court's written opinion held that the requirements for joinder under Rule 8 of the Federal Rules of Criminal Procedure had been satisfied and that the defendants had failed to make a sufficient showing of prejudice to justify separate trials (R. 70).

3. *See* Government Br. at 16. The jury was to be instructed that if it found the single large conspiracy count as alleged in Count I, it would not consider the remaining counts charging lesser conspiracies. Only if the jury found that there was no single all-inclusive conspiracy was it to proceed to consider Counts II through V.

4. Appellant alleges no specific prejudice arising from joinder of counts or defendants in this case but contends instead that dismissal of the overall conspiracy count, Count I, removed the trial court's discretion to deny his motions for severance. Appellant's Br. at 38. Although we find this a novel argument, we note that an almost identical argument was rejected by the

*Joinder of multiple offenses,* governed by Rule 8(a), is proper where they are "of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Joinder of related conspiracies is proper where each count is part of the same series of transactions constituting an overall conspiracy, *see United States v. Papadakis,* 510 F.2d 287, 296 (2d Cir.), *cert. denied,* 421 U.S. 950, 95 S.Ct. 1682, 44 L.Ed.2d 104 (1975), especially since the phrase "same series of acts or transactions" has been interpreted broadly in the interest of efficient judicial administration. The same rationale applies with respect to joinder of the 25 substantive offenses, as each was also alleged as an overt act in furtherance of the overall conspiracy (and of one or more lesser included conspiracies). *Monroe v. United States,* 98 U.S.App.D.C. 228, 230, 234 F.2d 49, 57, *cert. denied,* 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 76 (1956). Similarly, the two substantive bribery offenses were properly consolidated. Rule 13 permits consolidation of two indictments if the counts could properly be joined in one indictment under Rule 8(b). Because the evidence indicated that these payments also were made for the purpose of protecting appellant's numbers operation (Tr. 7844–47), they too arose from the same series of acts or transactions as the other substantive bribery offenses and the overall conspiracy count.

Having found that the defendants and offenses were properly joined initially under Rule 8, we conclude that the denial of appellant's motions to sever was within the discretion of the trial court under Rule 14.[5]

**B.** *Sufficiency of the Evidence*

■ Appellant next contends that the evidence was insufficient to support his conspiracy conviction and that the hearsay statements of his co-conspirators were improperly admitted against him in the absence of substantial independent evidence of his participation in the conspiracy. Appellant's Br. at 43. We find no merit in this argument. Contrary to appellant's assertions, the evidence against him was overwhelming, and was not limited to the testimony of Harold Crook and the voiceprint evidence, discussed *infra.* Appellant had made numerous admissions of his operation of a numbers game to both Crook and Rettew (Tr. 1375) and had repeatedly asked them for police protection for his operation (Tr. 1290, 7845–47). These admissions were in turn corroborated by intercepted telephone conversations in which appellant discussed his operation with several other persons (Tr. 6468–69, 6509–15, 6532–36). In addition, Crook testified that appellant bribed him during 1971 in return for protection of his gambling operation (Tr. 1298–99, 1615–16) and that he arranged a meeting between appellant and Pizzati, who later confirmed that they had reached an "understanding" (Tr. 1619–20). Moreover, Rettew testified that appellant personally delivered monthly payments of $400 (Tr. 7844–50) to him, and this testimony was corroborated by tape recordings of the intercepted telephone calls made by Rettew to appellant in December of 1972 (Tr. 7942–56). The independent evidence of appellant's control position in the conspiracy was thus sufficient to satisfy the requirements set forth in *United States v. Nixon,* 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), which held:

> Declarations by one defendant may also be admissible against other defendants upon a sufficient showing, by independent evidence, of a conspiracy among one

Supreme Court in *Schaffer v. United States,* 362 U.S. 511, 80 S.Ct. 945, 4 L.Ed.2d 921 (1960), in which the Court rejected the notion that prejudice arises as a matter of law following dismissal of an overall conspiracy count linking other offenses. *Id.* at 515–16, 80 S.Ct. at 948.

**5.** Rule 14 provides:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court *may* order an election or separate trial of counts, grant a severance of defendants or provide whatever other relief justice requires. . . . (Emphasis added).

or more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy. The same is true of declarations of coconspirators who are not defendants in the case on trial.

*Id.* at 701, 94 S.Ct. at 3104 (citations omitted).[6]

C. *Admission of Voiceprint Evidence*

We turn now to what is perhaps appellant's strongest argument, that the trial court improperly admitted expert spectrographic voice identification ("voiceprint") testimony.[7] Appellant directs our attention to two taped telephone conversations of December 12 and 19, 1972, in which appellant allegedly was a speaker. Appellant was identified as a speaker in the December 19th call independently of spectrographic evidence by an officer acquainted with appellant who testified that he recognized appellant's voice from the tape recording (Tr. 6981–83). A co-defendant, Pizzati, was allegedly the other speaker in the December 19th conversation. As part of the evidence identifying appellant as a participant in the December 12th conversation, and co-defendant Pizzati as a speaker in the December 19th call, the government offered the expert testimony of former Lt. Ernest Nash, of the Michigan State Police Department, a nationally recognized expert in spectro-

graphic identification. Nash testified that after listening to the tapes and examining and comparing the spectrograms of the unknown party to the December 12th call with known voice exemplars of appellant, he had identified appellant as the unknown speaker in that telephone conversation (Tr. 8064–65). The trial judge admitted this "voiceprint" testimony, relying on "the overwhelming weight of judicial precedent" allowing such testimony to be admitted (Tr. 7472), and finding that the technique has now become sufficiently reliable to gain general acceptance within the scientific community (Tr. 7618–19).

Unfortunately, however, the overwhelming weight of judicial precedent upon which the trial judge relied has evolved outside this judicial circuit. Appellant predictably relies on *United States v. Addison,* 162 U.S. App.D.C. 199, 498 F.2d 741 (1974), in which a division of this court recently held that "techniques of speaker identification by spectogram [sic-] comparison have not attained the general acceptance of the scientific community to the degree required in this jurisdiction by *Frye* [*Frye v. United States,* 54 U.S.App.D.C. 46, 293 F. 1013 (1923)]." *Id.* at 745. Admittedly, *Addison* was decided almost two years ago, at a time when the new technique may have been less widely accepted than today. Since *Addison,*

---

6. As to the quantum of independent evidence required, appellant relies on *United States v. Vaught,* 485 F.2d 320, 323 (4th Cir. 1973) for the proposition that there must be prima facie proof of the existence of a conspiracy. We believe this requirement was more than satisfied in appellant's case.

7. Generally speaking, the spectrograph is a machine designed to resolve complex sound waves into their component frequencies, which are then plotted in their respective intensities across time on electrically sensitive paper, resulting in a graph known as a spectrogram or voiceprint. The concept of speaker identification by voice spectrogram comparison assumes that (1) every voice is unique, (2) the spectrogram displays this uniqueness, and (3) an examiner can accurately determine whether two spectrograms match. Note, *The Voiceprint Dilemma: Should Voices Be Seen and Not Heard?,* 35 Md.L.Rev. 267, 269 (1975). The controversy surrounding identification by voice spectrogram has surrounded these theories.

For a sample of the disagreements among commentators relating to the admissibility issue, see *id.;* Cederbaums, *Voiceprint Identification: A Scientific and Legal Dilemma,* 5 Crim.L.Bull. 323 (1969); Jones, *Danger—Voiceprints Ahead,* 11 Am.Crim.L.Rev. 549 (1973); Kamine, *The Voiceprint Technique: Its Structure and Reliability,* 6 San Diego L.Rev. 213 (1969); Comment, *Mr. Kusta's Magic Box: The Admissibility of Voiceprint Evidence in Criminal Cases,* 10 Houston L.Rev. 85 (1972); Comment, *The Evidentiary Value of Spectrographic Voice Identification,* 63 J.Crim.L.C. & P.S. 343 (1972); Comment, *The Admissibility of Voiceprint Evidence,* 14 S.D.L.Rev. 129 (1969); Comment, *The Status of Voiceprints as Admissible Evidence,* 24 Syracuse L.Rev. 1261 (1973); Comment, *Voiceprints: The End of the Yellow Brick Road,* 8 U.San Fran.L.Rev. 702 (1974); Comment, *The Voiceprint Technique: A Problem in Scientific Evidence,* 18 Wayne L.Rev. 1365 (1972).

numerous other courts have examined the question of whether so-called voiceprints are sufficiently reliable to justify their admissibility, and all but a few have concluded that they are.[8] It may well be that the time has come to reexamine the holding of *Addison* in light of the apparently increased reliability and general acceptance in the scientific community of using spectrographic analysis techniques for voice identification purposes. In furtherance of the argument for admissibility, the government points out that recent appellate decisions have decided overwhelmingly in favor of admissibility of voiceprint identification. Government Br. at 40. Two of the three federal circuits which have considered the question have ruled favorably on admissibility of such evidence, *see United States v. Franks,* 511 F.2d 25 (6th Cir. 1975), *cert. denied,* 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 693 (1976); and *United States v. Baller,* 519 F.2d 463 (4th Cir. 1975), as have eight of nine state appellate courts.[9] In *United States v. Franks,* the Sixth Circuit took note of *Addison,* but concluded that "other courts are somewhat divided over, but the trend favors, the admissibility of voiceprints." 511 F.2d at 33 (citation omitted). Similarly, in a unanimous decision of the Fourth Circuit in *Baller,* Judge Butzner concluded that the reliability of spectrographic voice identification has been sufficiently proved to allow the jury to consider it on the theory that "it is better to admit relevant scientific evidence in the same manner as other expert testimony and allow its weight to be attacked by cross-examination and refutation." 519 F.2d at 466 (citations omitted).

In addition, the government informs us that 14 of the 15 United States district judges who have ruled on the issue have accepted voiceprint evidence and that "all but two of the 37 state tribunals" that have reached this issue have held such evidence admissible. Government Br. at 44–45 at notes 15 and 16.

■ Because *Addison* was so recently decided, its shadow looms over our consideration of this issue. The reliability of spectrographic voice identification and its general acceptability within the scientific community may have changed so dramatically in the past two years that we may explain that earlier opinion as a reflection of the then primitive state of spectrographic voice identification. Absent a clear showing that this is so, however, or *en banc* reconsideration of *Addison,* we are bound by the prior opinion, and spectrographic voice identification evidence remains inadmissible in this circuit at this time.

Although we have concluded that admission of evidence based on spectrogram analysis was error, we conclude that the error did not fatally infect the verdict in this case. *Kotteakos v. United States,* 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557, 1566 (1946). The evidence establishing ap-

---

8. *See, e. g., United States v. Baller,* 519 F.2d 463 (4th Cir. 1975); *United States v. Franks,* 511 F.2d 25 (6th Cir. 1975); *Commonwealth v. Lykus,* Mass., 327 N.E.2d 671 (1975); *United States v. Moses Brown, Jr.* (No. 34383, D.C. Supr.Ct., 1973), *motion for new trial denied,* April 8, 1975.

9. The following cases are cited in the government's brief at 40–41 n. 12:

See *People v. Kelly,* 49 Cal.App.3d 214, 122 Cal.Rptr. 393 (1975); *Alea v. State,* 265 So.2d 96 (Fla.Dist.Ct. of Appls.1972); *State v. Andretta,* 61 N.J. 544, 296 A.2d 644 (1972); *State ex rel. Trimble v. Hedman,* 291 Minn. 442, 192 N.W.2d 432 (1972); *Worley v. State,* 263 So.2d 613 (Fla.Dist.Ct. of Appls.1972); *Hodo v. Superior Ct.,* 30 Cal.App.3d 778, 106 Cal.Rptr. 547 (1973); *People v. Watson* (Cal. App., 3rd Dist.Ct., May 7, 1973, unpublished

opinion); *Commonwealth v. Lykus,* 327 N.E.2d 671 (Mass.1975); *Contra, People v. Law,* 40 Cal.App.3d 69, 114 Cal.Rptr. 708 (1974). A recent decision by an intermediate appellate court in Michigan held that a trial court erred in admitting voiceprint identification "since the prosecutor failed to lay a proper foundation for the admission of this testimony." *People v. Tobey,* 60 Mich.App. 420, 231 N.W.2d 403 (1975). However, the court explicitly noted that it was not reaching the issue of "whether voiceprint identification is admissible as scientific evidence under the test set forth in *Frye v. United States,* 54 U.S.App.D.C. 46, 293 F. 1013 (1923) and *People v. Morse,* 325 Mich. 270, 38 N.W.2d 322 (1949)." *People v. Tobey,* 231 N.W.2d at 407–08, n. 3.

pellant's guilt as the organizer and leader of his own numbers operation was overwhelming. Not only the testimony of Crook and Rettew, but also the interception of the telephone conversations at appellant's residence, confirmed his involvement. The facts that appellant's voice was independently identified by a police officer (Rettew) familiar with him who testified as to the content of the December 19th conversation (Tr. 6981–83, 7945–47), that the intercept was on appellant's home phone (Tr. 5809, 7955–56), and that the speaker answered to the names McDaniel, Charles, Dan, and Danny (Tr. 5844–49), leave little doubt that appellant was the unknown party to the intercepted December 12th conversation. The spectrographic analysis was therefore relegated to the status of relatively unimportant corroborative evidence.

Similarly, the spectrographic identification of Pizzati's voice as a participant in the December 19th conversation was harmless to appellant. In this conversation, appellant and the individual identified as Pizzati agreed to meet for an unspecified purpose. Although this evidence related to Pizzati's connection with the gambling/bribery conspiracy, appellant's involvement was already clearly established through the testimony of Officers Crook and Rettew. The erroneous admission of evidence implicating another individual thus could have no effect on the verdict with respect to appellant.

D. *Double Jeopardy*

 Finally, appellant's contention that his conspiracy conviction was barred by the Double Jeopardy Clause requires little discussion. The argument can be summarized briefly as follows. At the conclusion of the government's case, the trial judge dismissed Count I (the all-inclusive conspiracy count) as to all defendants. Appellant's case was submitted to the jury on Count IV, the lesser included conspiracy, which alleged essentially the same conduct as Count I. Consequently, appellant contends, the dismissal of Count I after the jury was empaneled and sworn operated as a bar to his trial on Count IV. This argu-

ment simply cannot stand. The Double Jeopardy Clause is clearly inapplicable to multiple counts under the same indictment, *United States v. Knight,* 166 U.S.App.D.C. 21, 509 F.2d 354, 361 (1974); it applies rather to successive prosecutions in *separate* trials. Dismissal during trial of one count of a multiple count indictment has no double jeopardy implications with respect to the remaining counts. *United States v. Klein,* 247 F.2d 908, 919 (2d Cir.), *cert. denied,* 355 U.S. 924, 78 S.Ct. 365, 2 L.Ed.2d 354 (1957); *Barsock v. United States,* 177 F.2d 141, 143 (9th Cir. 1949). The purpose of the Clause is to require the government to press its case against an individual for an alleged offense in a single proceeding. As a division of this court recently stated in *Knight, supra,*

> [T]he opportunity of the prosecution under modern procedure to consolidate in a single trial all issues arising out of a single transaction, undercuts any claims of need to have recourse to multiple prosecutions in contravention of the Double Jeopardy Clause. This court has commented on the advisability of combining all possible charges into one prosecution so as to avoid double jeopardy problems and conserve judicial energies.

509 F.2d at 367 (citation omitted). Trial of these related counts, allegedly arising from the same series of acts or transactions, *i. e.* the overall conspiracy, thus worked in harmony with the Double Jeopardy Clause, not in opposition to it. As the Clause requires, the government was given one, and only one, opportunity to prove its case.

## III. CONCLUSION

For the reasons discussed above, we hold that the trial court erred in admitting the voiceprint evidence. We find it unnecessary to remand the case, however, because we believe the error was harmless in the face of overwhelming evidence of appellant's participation in the conspiracy for which he was convicted. We find no other infirmities in the trial court's handling of the case; consequently, the convictions are

*Affirmed.*