JUSTICE WARNER
concurring and dissenting.
¶49 I concur that Snell failed to meet his burden of proof that two of his earlier convictions were constitutionally infirm and that the District Court properly allowed testimony concerning Snell’s intoxication. I dissent from the Court’s Opinion on issue two holding that the results of the PAST were improperly admitted into evidence at trial. The District Court did not err in admitting the results of the PAST test.
¶50 In Strizich, we concluded that PAST evidence was inadmissible at trial as a matter of law. Strizich, 286 Mont. at 11-12, 952 P.2d at 1371-72. We based this conclusion on §§ 61-8-402, 404, MCA (1995), which made specific provisions for use of the results of a post-arrest blood/alcohol test as trial evidence; and on § 61-8-409, MCA (1995), and Rule 23.4.201(7)(b), ARM (1995), which specifically limited use of the results of PAST tests for determination of probable cause for arrest. Strizich, 286 Mont. at 11, 952 P.2d at 1371. In so concluding we stated, “that results of a [PAST] are not substantive evidence of the amount of alcohol present in a person’s body, but instead are an ‘estimate’ of alcohol concentration for the purpose of establishing probable cause to believe that a person is under the influence of alcohol prior to making an arrest....” Strizich, 286 Mont. at 12, 952 P.2d at 1372.
¶51 Also in 1997, the Legislature made significant changes to the statutory scheme controlling use of PAST results at trial. Sections 61-8-402,404, MCA (1997), were revised; removing the provisions limiting the use of breath test results to tests given post-arrest. Section 61-8-404(l)(b )(i), MCA (1997), was amended to specifically include PAST results as evidence admissible at trial, and now reads as follows:
(1) Upon the trial of a [DUI] ...:
(b) a report of the facts and results of one or more tests of a *186 person’s blood or breath is admissible in evidence if:
(i) a breath test or preliminary alcohol screening test was performed by a person certified by the forensic sciences division of the department to administer the test. [Emphasis added.]
The revisions to § 61-8-409, MCA (1997), eliminated the provision limiting the use of PAST results to probable cause determinations. Additionally, in March 2002, the Department of Justice, Forensic Science Division, deleted Rule 23.4.201(7)(b), ARM, and part of Rule 23.4.225(l)(a), ARM, which previously had restricted use of PAST results solely as evidence of probable cause. It is clear from these revisions that the Legislature intended, and the Department concurred, that the results of PAST tests be admissible evidence at trial, provided, of course, that a proper foundation is laid before admission.
¶52 After the 1997 amendments, this Court did not again take up an in-depth analysis of the PAST test until it decided Weldele in 2003. In Weldele, the state produced foundation evidence regarding the PAST machine’s certification and the training the officers received, but did not produce evidence tending to prove the reliability of the science underlying the PAST. Weldele, ¶¶ 45, 58. Despite the fact that no scientific evidence existed in the Weldele record, this Court took it upon itself to review the evidence submitted five years earlier in Strizich, and the legislative history of the 1997 amendments. See Weldele, ¶¶ 52-54.1 agree with Justice Rice’s dissent in Weldele, that reviewing evidence presented in a prior case was inappropriate. See Weldele, ¶ 86. The Weldele court should have waited until it had scientific evidence before it opined on the “statistically unreliable” nature of the PAST, especially given the fact the Strizich evidence was five years old by the time the Weldele court reviewed it.
¶53 I also disagree with the Weldele court’s summation of the law as set forth in Strizich. In Strizich, we approved the District Court’s order which determined that PAST results could not be substantive evidence at all, and stated that the District Court’s decisions “were correctly based on the statutory scheme pertaining to [PAST’s]....” Strizich, 286 Mont. at 11, 952 P.2d at 1371. Thus, we held that PAST results were inadmissible as a matter of law. Strizich, 286 Mont. at 12, 952 P.2d at 1372. Then in Weldele, we began with a blanket statement that “the admissibility of [PAST] evidence remains the law as set forth in Strizich-, it has not been overruled and district courts are bound by it.” Weldele, ¶ 58. However, we then turned around and said:
*187 This is not to say that we will never approve trial admission of this evidence. The State may take the opportunity at any time to establish [PAST] reliability. If the State in any given case establishes that the [PAST] results it seeks to admit are reliable and accurate, the results could then be admissible if they otherwise satisfy all other requirements for admissibility.... Under Strizich, Weldele was not obligated to prove that the [PAST] was unreliable. Rather, the State had the burden of offering scientific and expert testimony to establish the test’s reliability.
Weldele, ¶¶ 57-58. So which is it? Inadmissible as a matter of law, or admissible if proved reliable? The point is this: in this case the majority’s analysis of the PAST issue derives solely from Strizich and Weldele. Strizich at a minimum has been superceded by statute and the shaky analysis of Weldele. Weldele itself was decided on five year old evidence not before the Court. We must give the PAST a fresh look.
¶54 Substantial scientific evidence was presented at the evidentiary hearing. Two experts testified as to the basic fuel cell technology underlying the Alco-Sensor III device. Both agreed that the fuel cell technology utilized by the Alco-Sensor III accurately measures blood/alcohol content, though they differed as to what they thought were appropriate uses of the resulting measurements. State’s Exhibit 8-A, entitled “Fuel Cell Technology Applied to Alcohol Breath Testing,” is an article put out by Intoximeters, Inc., the manufacturer of the Alco-Sensor III, which describes the history of fuel cell technology, fuel cell construction, application of the technology to breath alcohol measurement, principles of measurement, and the mechanics of breath sampling. The article relates the improvements made to fuel cell technology since 1986 and describes the testing done on the Alco-Sensor III to ensure that the machine is accurate at low blood/alcohol concentrations. Finally, the article includes a schematic of a fuel cell configuration, and a number of graphs and charts, the most informative of which highlights the Alco-Sensor Ill’s ability to distinguish ethanol from a variety of other chemicals.
¶55 State’s Exhibit 11, a report by the U.S. Department of Transportation, entitled “The Accuracy of Evidential Breath Testers at Low BAC’s,” states that the Alco-Sensor III is “just as accurate at low BAC’s in the 0.020-0.040% range as they were when tested at 0.050%, 0.100%, and 0.150% against the NHTSA model specifications for evidential breath testers.”
¶56 State’s Exhibit 7, is a chapter entitled “The Fuel Cell,” from the Montana Department of Justice, Forensic Science Division’s manual *188 on blood/alcohol related issues. The chapter includes information on fuel cell construction, the basic chemistry that occurs when alcohol comes in contact with the fuel cell, the effects of temperature, age, and proper use of the fuel cell on cell performance, and methods of measurement. Two reports, one by the Mesa, Arizona, Police Department Crime Lab and the other by the Idaho Department of Health and Welfare, Forensic Section, produced after extensive field and laboratory testing, concluded that the Aleo-Sensor III is an accurate and reliable blood/alcohol measurement device.
¶57 Rule 702, M.R.Evid., allows a qualified expert witness to testify as to scientific evidence if the testimony will help the trier of fact understand the evidence. In Barmeyer, we determined:
[ajbsolute certainty of result or unanimity of scientific opinion is not required for admissibility.... Unless an exaggerated popular opinion of the accuracy of a particular technique makes its use prejudicial or likely to mislead the jury, it is better to admit relevant scientific evidence in the same manner as other expert testimony and allow its weight to be attacked by cross-examination and refutation.
Barmeyer, 202 Mont. at 193-94, 657 P.2d at 598, overruled on other grounds by, Martel v. Montana Power Co. (1988), 231 Mont. 96, 752 P.2d 140, (quoting United States v. Baller, (4th Cir. 1975), 519 F.2d 463).
¶58 In 1998, we affirmed this standard concerning the general admissibility of scientific evidence stating:
a trial court presented with scientific evidence ... is encouraged to liberally construe the rules of evidence so as to admit all relevant expert testimony pursuant to Barmeyer.... [I]f a court is presented with an issue concerning the admissibility of scientific evidence in general, the court must employ a conventional analysis under Rule 702, M.R.Evid., while again adhering to the principle set forth in Barmeyer.
Hulse v. State, 1998 MT 108, ¶ 63, 289 Mont. 1, ¶ 63, 961 P.2d 75, ¶ 63. ¶59 After conceding in ¶ 36 that the trial court heard expert testimony and that an “extensive discussion of past technology” was held at the evidentiary hearing, the majority in this case proceeds to say, “[hjowever, the court held the evidentiary hearing in 2001, prior to our 2003 Weldele decision.” The majority’s analysis in this case is practically a verbatim quotation from Weldele, contains minimal adf'-Honal analysis, and contains no guidance for the State on what fui ~ evidence is necessary to convince the Court. The ruling here *189 makes the assurance in Weldele that the evidence could be admitted empty indeed.
¶60 The defendant’s own expert acknowledged that he is unaware of any additional peer review article in any scientific journal that would tend to either support or debunk the evidence submitted in this case. The quantity and quality of the scientific evidence submitted in this case provided evidence of the reliability of the Aleo-Sensor III. The District Court correctly found that the PAST evidence was admissible, and that all challenges based on variables such as temperature, humidity, operator skill, air quality, etc., go to the weight of the evidence. There was no abuse of discretion in admitting the results of the PAST.
¶61 I would affirm the judgment.
CHIEF JUSTICE GRAY and JUSTICE RICE join in the foregoing concurrence and dissent of JUSTICE WARNER.