**UNITED STATES of America**

v.

**John A. SHORTER, Jr.**

**Crim. No. 84–0421.**

United States District Court, District of Columbia.

Sept. 13, 1985.

---

Plato Cacheris, Larry S. Gondelman, Hundley & Cacheris, Washington, D.C., Marvin J. Garbis, Ronald B. Rubin, Garbis, Marvel & Junghans, Baltimore, Md., for defense.

## MEMORANDUM ORDER

HAROLD H. GREENE, District Judge.

Presently pending before the Court is the government's motion to preclude the defendant from introducing expert testimony on defendant's alleged compulsive gambling disorder. The issue has arisen in the following manner.

Defendant stands indicted for one count of tax evasion (26 U.S.C. § 7201) and six counts of willful failure to pay federal income taxes (26 U.S.C. § 7203). Pursuant to Fed.R.Crim.P. 12.2(b), he has filed a notice of his intention to place in issue his mental condition by presenting expert evidence that he suffers from a pathological gambling disorder. This expert testimony, it is claimed, will tend to negate willfulness—an essential element of both the tax evasion and failure to pay counts. *United States v. Bishop*, 412 U.S. 346, 361, 93 S.Ct. 2008, 2017, 36 L.Ed.2d 941 (1973).[1] Defendant contends that expert testimony will show that he suffers from a disorder that compels him to expend nearly all of his available financial resources on gambling, leaving him no funds with which to meet his tax obligations. He further argues that it is this compulsion, rather than any intent to evade or fail to pay income taxes, which explains the conduct forming the basis of the indictment.[2] It is defendant's notice and the supporting arguments that prompted the government motion.

Carol E. Bruce, Darryl W. Jackson, Asst. U.S. Attys., Washington, D.C., for Government.

1. In a criminal tax case, willfulness means "a voluntary, intentional violation of a known legal duty." *United States v. Pomponio,* 429 U.S. 10, 12, 97 S.Ct. 22, 23, 50 L.Ed.2d 12 (1976).

2. The government's evidence will allegedly show that defendant engaged in a course of conduct spanning many years that was consciously and willfully designed to defeat the payment of income taxes. This conduct allegedly included, *inter alia,* (1) concealment of personal assets, (2) making of false statements to agents of the Internal Revenue Service, (3) failure to pay taxes despite a filing of tax returns declaring a liability, (4) failure to satisfy numerous notices of deficiency, levies, and judgments by the Internal Revenue Service, (5) failure to keep any financial records, (6) failure to pay despite possession of available funds, and (7) defendant's poor history of non-payment of federal, state and local taxes.

## I

Expert testimony is admissible in a proper case under Fed.R.Evid. 702. However, to be admissible, such evidence must be relevant (Fed.R.Evid. 402), and the issue of relevance is a preliminary question of law to be decided by the court (*United States v. Torniero*, 735 F.2d 725, 730 (2d Cir.1984), *cert. denied*, — U.S. —, 105 S.Ct. 788, 83 L.Ed.2d 782 (1985); Fed.R. Evid. 104), which possesses broad discretion when ruling on that question. *Salem v. United States Lines*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962); *United States v. Torniero, supra*, at 730; 3 Weinstein's Evidence ¶ 702[02] at 702–12 (1982).

Because juries sometimes grant special deference to the testimony of an expert, courts seek to ensure that the subject matter of the expert testimony is reliable. *United States v. Addison*, 498 F.2d 741, 744 (D.C.Cir.1974). On this basis, most courts hold that expert testimony may not relate to a scientific theory that is speculative or accepted by only a few members of the particular learned profession. Hence, this and other Circuits, as well as many States, follow the decision in *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), which prohibits the admission of expert testimony unless the scientific subject matter of the testimony is generally accepted by the relevant community of experts. *United States v. McDaniel*, 538 F.2d 408, 412–13 (D.C.Cir. 1976) (voice print spectrography); *Frye v. United States, supra* (polygraph); *United States v. Lewellyn*, 723 F.2d 615, 619 (8th Cir.1983) (compulsive gambling); *United States v. Stifel*, 433 F.2d 431, 438 (6th Cir.1970) (neutron activation analysis). See also, 3 Weinstein's Evidence ¶ 702[03] at 702–15 (1982).[3]

*Frye* mandates a three-part inquiry into the relevancy of expert testimony, in this case expert testimony of pathological gambling. Such testimony will be admitted if the defendant is able to establish (1) that a disorder known as "pathological gambling" is recognized by the relevant community of experts; (2) that experts generally accept a causal link between pathological gambling and the failure to pay taxes; and (3) that the facts are sufficient to create a jury question as to whether the particular defendant suffers from a pathological gambling disorder.

## II

After considering the evidence, the Court has concluded that, insofar as the pathological gambling disorder is concerned, the relevant scientific community is the mental health community, that is psychiatrists and psychologists generally. *United States v. Lewellyn, supra*, at 619.[4] With this predicate in mind, it is appropri-

---

**3.** While several courts have adopted a standard for admitting expert testimony that is less stringent, calling only for "substantial acceptance" of the scientific subject matter by the relevant expert community (see *United States v. Gould*, 741 F.2d 45, 49 n. 2 (4th Cir.1984); ("substantial acceptance"); *United States v. Torniero, supra*, 735 F.2d at 724, 731 n. 9 (same)), *Frye* is still the rule in this Circuit. See *United States v. McDaniel, supra*, at 412–13. In any event, defendant's argument fails even under the less stringent standard.

**4.** Defendant appears to contend that the relevant scientific community is that of the limited number of psychologists and psychiatrists who specialize in pathological gambling disorders. That contention is clearly mistaken. It is, of course, always possible to locate a few experts in a field—such as the operation of polygraphs or the discovery of an exotic cure for cancer—

who will be convinced of the efficacy of their particular methodology. But the *Frye* test demands an acceptance by a wider scientific community, precisely in order to eliminate those who are "experts" only in their own eyes and the eyes of a relatively small group of individuals with similar ideas.

The *Addison* court, rejecting a trial court's admission of spectrographic voice identification evidence, made plain that *Frye* requires that the subject matter of expert testimony be scientifically mature:

Thus, while portions of the record suggest that spectrogram analysis may *become* a useful tool for the resolution of questions of criminal liability, it is equally clear that [the technique has] not attained the general acceptance of the scientific community to the degree required by *Frye*.

498 F.2d at 741 (emphasis supplied and footnotes omitted).

ate now to consider the three parts of the *Frye* test.

■ First. The experts presented by both the government and the defense appear to agree, with varying degrees of certainty, that pathological gambling is a recognized disorder. In this regard, the Court finds persuasive the inclusion of pathological gambling in the 1980 edition of the American Psychiatric Association Diagnostic and Statistical Manual of Mental Disorders (hereinafter DSM–III).[5] The fact that pathological gambling was not included in the Manual prior to 1980 indicates that the disorder has only recently been recognized by the mental health community. *United States v. Torniero, supra,* 735 F.2d at 731. Nevertheless, despite its relatively recent appearance in DSM–III, the Court concludes that the disorder has achieved general acceptance by mental health professionals, and that accordingly it may be "recognized" as a disorder by the courts.

Second. To be relevant in a prosecution charging tax evasion and willful failure to pay taxes, the pathological gambling disorder must be relevant to one or more elements of the charged offenses (*United States v. Peterson,* 509 F.2d 408, 414 (D.C. Cir.1974)), that is, the proferred testimony must "tend[ ] to prove or disprove a matter 'properly provable in the case.'" *United States v. Torniero, supra,* 735 F.2d at 730 (quoting Fed.R.Evid. 401 advisory committee note). The defense contends that testimony concerning a pathological gambling disorder is relevant[6] in that a pathological gambler is compelled by the internal mental pressures inherent in his disease to expend substantially all of his available funds for gambling, rather than for paying tax liabilities, and that this compulsion negates the element of willfulness required to convict for tax evasion or willful failure to pay.[7]

In deciding the relevance of pathological gambling to criminal intent, the Court does not write on a clean slate. Three Circuits have concluded that a link between pathological gambling and criminal intent is not sufficiently accepted by mental health professionals to sustain the relevance of the disorder with respect to an insanity defense. *United States v. Gould, supra,* at 52 (robbery); *United States v. Torniero, supra,* at 734 (interstate transportation of stolen goods); *United States v. Lewellyn, supra,* at 619 (embezzlement).[8] To be sure, the issue in an insanity case—whether "as a result of mental disease or defect [a defendant] lacks substantial capacity either to appreciate the wrongfulness of his

---

**5.** DSM–III describes "pathological gambling" as a chronic and progressive failure to resist impulses to gamble and gambling behavior that compromises, disrupts, or damages personal, family, or vocational pursuits. The gambling preoccupation, urge, and activity increase during periods of stress. Problems that arise as a result of the gambling lead to an intensification of the gambling behavior. Characteristic problems include loss of work due to absences in order to gamble, defaulting on debts and other financial responsibilities, disrupted family relationships, borrowing money from illegal sources, forgery, fraud, embezzlement, and income tax evasion. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ¶ 312.31 (3d ed. 1980).

**6.** The government argues that defendant's proffer of expert testimony is an impermissible attempt to raise the defense of diminished capacity in a criminal tax case, contending that a diminished capacity defense is not recognized in

this jurisdiction for any offense other than first degree murder. See *United States v. Brawner,* 471 F.2d 969 (1972) (en banc); *United States v. Peterson,* 509 F.2d 408 (1974); *Bishop v. United States,* 107 F.2d 297, 301 (D.C.Cir.1939). However, because the Court finds that there is no generally accepted link between pathological gambling disorder and a defendant's intent to commit tax offenses, it is not necessary to decide that issue. Moreover, as noted below, defendant claims that his experts would testify to the question of willfulness, not to that of diminished capacity.

**7.** Alternatively, defendant offers the testimony on the closely related issue of an explanation for his so-called "cash lifestyle," failure to keep financial records and failure to maintain bank accounts in his own name—conduct which the prosecution seeks to portray as indicative of a knowing and voluntary violation of the tax laws.

**8.** No Circuit has held to the contrary.

conduct or to conform his conduct to the requirements of law"—differs to some extent in theory from the issue of willfulness. Nevertheless, as *Brawner v. United States, supra,* and other decisions make clear, it is somewhat of a misnomer to consider the defense under the rubric of diminished responsibility (much less sanity), and the real issue is one of willfulness and specific intent.[9]

Rather than to rely solely on these appellate precedents, this Court has heard substantial testimony on whether experts generally accept a hypothesis about compulsive gambling that would tend to prove or disprove willfulness.

The defense presented three experts.[10] The testimony of these defense experts was essentially similar. Each testified that pathological gamblers often fail to pay their taxes. Their testimony was less certain as to the existence of a causal link between the disorder and the absence of a willful intent to commit tax offenses. Dr. Moravec, who appears to have had the greatest experience treating pathological gamblers, opined that the pathological gambler "chooses not to" pay taxes in the belief that his funds, if devoted to gambling, will generate a "big win" that allows him to meet all outstanding obligations. Dr. Moravec's view of the disorder, even if accepted by the mental health community, would not tend to establish that compulsive gamblers are deprived of an ability to consciously choose between gambling and paying taxes. Furthermore, Dr. Moravec came even to this limited conclusion with respect to defendant notwithstanding the fact that defendant, according to the government, was able to make the choice of spending substantial amounts on an expensive automobile and on gifts to a girlfriend, and to make other significant non-gambling expenditures. Dr. Moravec was also unable adequately to explain why defendant, a prominent and successful attorney during these same years, was able to organize and manage his law practice but unable to engage in financial planning to meet his tax liabilities.[11] In any event, the Court found Dr. Moravec's testimony to be vague and contradictory, and it takes into account the possibility that Dr. Moravec, who belongs to a very small group of psychologists specializing in pathological gambling, has an incentive to make rather sweeping claims about the illness. See *infra.*

Dr. Ciarrocchi also conceded that pathological gamblers "will prioritize their needs" and choose to make non-gambling expenditures that are important to them. In light of his limited experience as a practicing psychologist, Dr. Ciarrocchi's testimony was principally relevant to the history and treatment of defendant himself. Defendant's own experience is not, however, of central relevance to the question of whether a causal link between the disorder and criminal intent is generally accepted by the mental health community.

Dr. Resnik, the most credible and qualified defense expert, essentially confirmed the testimony of Drs. Moravec and Ciarroc-

---

**9.** The *Brawner* court wrote that its doctrine of diminished responsibility "has nothing to do with 'diminishing' responsibility of a defendant because of his impaired mental condition, but rather with determining whether the defendant had the mental state that must be proved as to all defendants." *Brawner v. United States, supra,* 471 F.2d at 998.

**10.** Dr. Joseph W. Ciarrocchi, a clinical psychologist, is Director of Addiction Services at Taylor Manor Hospital in Ellicott City, Maryland, where he supervises residential and out-patient programs for compulsive gamblers. He has treated the defendant since February 1985. Dr. Jule D. Moravec, a clinical psychologist of four-

teen years experience, is Associate Director of the Veterans Administration Medical Center in San Diego, California and specializes in the research and treatment of pathological gambling. Dr. Harvey L.P. Resnik is a psychiatrist in private practice with over twenty-five years experience in psychiatry, and is a Clinical Professor at the George Washington School of Medicine. He has personally treated approximately twenty pathological gamblers.

**11.** The witness acknowledged that not all pathological gamblers are not also tax evaders, and he simply answered "I don't know" when questioned why this was so.

chi. While maintaining, at one point, that a pathological gambler lacks the specific intent to commit tax offenses because he is irresistibly compelled to gamble with most of his funds, Dr. Resnik later testified that an individual, such as defendant, who embarks on a gambling spree (1) knows that he has failed to pay his taxes, and (2) makes a volitional choice to gamble rather than pay.

Finally, defendant's experts—all directly involved with the diagnosis and treatment of pathological gamblers—did testify that the gambling compulsion undermines the ability to comply with such laws as those relating to the payment of income tax, but they also in the main conceded that they were at the cutting edge of this field, and that the bulk of the community of psychiatrists and psychologists remains to be convinced.

The impression gleaned from the testimony of defendant's experts is that the impact of pathological gambling disorder on the volitional faculties is, at best, unclear even among those mental health professionals specializing in the treatment of the disorder. It is, however, the broader community of psychologists and psychiatrists to which the Court must turn in assessing the reliability of expert testimony under *Frye* (*United States v. Lewellyn, supra*, 723 F.2d at 619), and as to them clarity is not lacking.

Each of the government's witnesses— three forensic psychiatrists and one forensic psychologist—categorically rejected the claim that pathological gamblers are unable to choose between gambling and paying taxes. Of greatest significance to the present case is Dr. Abraham L. Halpern's testimony that the "vast majority" of psychiatrists reject the proposition that pathological gamblers are unable to choose between gambling and paying taxes. Dr. Halpern, whom the Court has found to be an exceptionally well-qualified and persuasive witness,[12] testified that pathological gamblers retain the ability to make conscious decisions about their financial expenditures. The government's other experts, Drs. Neil H. Blumberg, David L. Shapiro and Raymond F. Patterson [13] each also offered the opinion that there exists no recognized link between pathological gambling and criminal tax offenses.

■■■ It should also be noted that it may not even be necessary for the Court definitively to resolve the disagreements between the experts. Under the *Frye* test, the issue is whether the existence "of a causal link between this disorder and commission of the type of offenses ... charged" (*United States v. Gould, supra*, 741 F.2d at 48, quoting *United States v. Torniero, supra*, 735 F.2d at 731), commands "general acceptance" (*Frye v. United States, supra*, 293 F.2d at 1014), in the mental health community. The Court is firmly convinced, based on the evidence, that such general acceptance is lacking at the present time. While there are, to be sure, "seriously contradicting views" (*United States v. Torniero, supra*, 735 F.2d at 731), it is quite clear that there is no general acceptance among the experts in the relevant scientific community that

12. Dr. Halpern is the Director of the Department of Psychiatry at United Hospital in Portchester, New York; a Clinical Professor of Psychiatry at New York Medical College; certified by the American Board of Forensic Psychiatry and the American Board of Psychiatry and Neurology; and co-author of an article on compulsive gambling that has been accepted by the *American Journal of Forensic Sciences*. His medical career spans more than thirty years.

13. Dr. Blumberg is a psychiatrist in private practice with eight years of psychiatric experience, a diplomate of the American Board of Psychiatry and a Clinical Instructor at the University of Maryland School of Medicine. Dr. Shapiro is a forensic psychologist in private practice with sixteen years of experience and an Associate Clinical Professor at the George Washington University School of Medicine and Health Services. Dr. Patterson, a psychiatrist, is the Acting Associate Superintendent of General Clinical Programs at Saint Elizabeths Hospital, board certified by the American Board of Psychiatry and Neurology, and an Assistant Professor of Psychiatry at Howard University.

there is a link between the pathological gambling and the failure to pay taxes.[14]

Finally, one must not completely disregard the consequences of the theories offered in support of the admission of the expert testimony proffered by defendant. If these experts are correct, it would be difficult, if not impossible, to establish a principled dividing line between a lawyer who evades his income taxes on account of his compulsive gambling, and an individual who craves alcohol or drugs and commits robberies or other, similar offenses to obtain the funds to satisfy his needs. In both types of instances, there could be presumed to be compelling forces which cause the individual to violate the law, and under the theory of defendant here, both must be exonerated. That is not, and cannot be, the law. See *United States v. Moore*, 486 F.2d 1139, 1147 (D.C.Cir.), *cert. denied*, 414 U.S. 980, 94 S.Ct. 298, 38 L.Ed.2d 224 (1973) (concurring opinion of three judges) (narcotics addiction is not a defense to prosecution for possession of heroin);[15] *United States v. Lyons*, 731 F.2d 243, 245 (5th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 323, 83 L.Ed.2d 260 (1984) (narcotics addiction, without more, raises no issue of mental disease that can be used as a defense to prosecution for narcotics offenses). *See also, Powell v. Texas*, 392 U.S. 514, 535, 88 S.Ct. 2145, 2155, 20 L.Ed.2d 1254 (1968) (defendant's allegedly irresistable urge to drink did not preclude conviction for public intoxication).

It may be that an alcoholic or an addict is entitled to consideration in terms of the availability of a lack of willfulness defense while in a state of intoxication or under the direct influence of the illegal substance. But such substance abusers are not regarded as deprived of free will for offenses committed during "lucid" intervals. The claim made on behalf of this defendant is that never, during a twelve-year period, was he sufficiently free from the pathological gambling disorder to pay his taxes (even though, among other things, he managed during this period to operate a busy and highly-regarded litigation practice).

Third. In light of the Court's conclusion that expert evidence on pathological gambling disorder is not relevant to the offenses charged and will not be admitted, it is unnecessary to decide whether defendant himself meets the profile of a pathological gambler, and the Court renders no decision thereon.

For the reasons stated, it is this 13th day of September, 1985

ORDERED that the expert testimony proferred by the defense will not be admitted at the trial.[16]

---

**14.** As indicated in note 7, *supra,* defendant contends that the experts' familiarity with the personal habits of compulsive gamblers would help the trier of fact to assess the government's argument that defendant's lifestyle is evidence of an intent to willfully evade and willfully fail to pay taxes. However, the Court has been given no compelling indication suggesting that defendant's gambling activities and their impact on his financial habits require the testimony of experts, as opposed to lay witnesses familiar with the defendant's activities. When the specialized knowledge of an expert is unnecessary to a jury's assessment of the salient factual issues, expert testimony will normally be excluded. See, *e.g., United States v. Navarro-Varelas,* 541 F.2d 1331, 1334 (9th Cir.1976) (expert defense testimony that would be cumulative of lay testimony and of no appreciable help to jury was

properly excluded), *cert. denied,* 429 U.S. 1045, 97 S.Ct. 751, 50 L.Ed.2d 759 (1977).

**15.** The *Moore* court approved the exclusion of expert testimony that would have portrayed defendant as "helpless to control his compulsion to obtain and use heroin." 486 F.2d at 1143. The defendant's proffer in *Moore* was remarkably similar to the evidence proffered by defendant here.

**16.** This ruling should not be interpreted as precluding the defendant, through lay testimony, including his own, to seek to persuade the jury regarding his gambling propensities related to his inability to pay his taxes when they were due.